**WAYNE TOWNSHIP BOARD OF SCHOOL COMMISSIONERS and The Metropolitan School District of Wayne Township, Appellants–Defendants,**

v.

**INDIANA INSURANCE COMPANY and Tudor Insurance Company, Appellees–Plaintiffs.**

No. 49A05–9403–CV–106.

Court of Appeals of Indiana, Fifth District.

May 30, 1995.

Rehearing Denied July 24, 1995.

Jon M. Bailey, Robert B. Clemens, Marya Mernitz Rose, Bose McKinney & Evans, Indianapolis, for appellants.

George V. Heins, Smith, Maley & Douglas, Robert A. Smith, William F. McManus, Bishop Smith & Bishop, Indianapolis, for appellees.

## OPINION

BARTEAU, Judge.

The Wayne Township Board of Education and the Metropolitan School District of Wayne Township (collectively, "the school") appeal from the trial court's order granting summary judgment in favor of Indiana Insurance Company ("Indiana Insurance") and Tudor Insurance Company ("Tudor"). We heard oral argument on April 25, 1995.

### FACTS

In February or March of 1988, Mr. Barger, the principal of Robey Elementary School, sexually molested S.M. while the student was in his office. The incident consisted of S.M. sitting on Barger's lap while Barger forced S.M. to touch his genitals with her hand through his trousers. Barger was convicted of child molesting under Ind. Code 35–42–4–3. S.M. filed suit against Barger and the school, alleging:

As a direct proximate result of the negligence of the Defendant, Wayne Township Board of Education, and the actions of the Defendant, Michael Barger, described hereinabove, the Plaintiff, [S.M.], has suffered severe emotional and psychological trauma and distress requiring extensive counseling, she has inflicted injury upon herself, she has incurred medical expenses, and will carry the emotional scars of this molestation for the remainder of her life.

R. 30.

At the time of the incident, the school and Barger were insured under a Comprehensive General Liability Insurance Coverage ("CGL") policy issued by Indiana Insurance, and an Educational Errors and Omissions policy issued by Tudor. When both insurers denied coverage, the school brought the instant action for declaratory judgment seeking defense and coverage of the claims.

### ISSUE

We restate the issue presented by the school as whether the trial court erred in granting summary judgment in favor of Indiana Insurance and Tudor.

### DISCUSSION

In summary judgment proceedings, the party moving for summary judgment must show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Once the movant establishes that no genuine issue of fact exists, the party opposing summary judgment must set forth specific facts indicating that there is a genuine issue in dispute. If the non-moving party fails to meet this burden, summary judgment in favor of the moving party is appropriate. *Pierce v. Bank One–Franklin, NA* (1993), Ind.App., 618 N.E.2d 16, 18, *trans. denied.* Further, the party moving for summary judgment must designate to the trial court all parts of the matters included in the record that it relies on for the motion. The opposing party likewise must designate to the trial court "each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto." Ind. Trial Rule 56(C). Any doubt as to the

existence of a factual issue should be resolved against the moving party, construing all properly asserted facts and reasonable inferences in favor of the non-movant. *Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630, 633.

Summary judgment based upon construction of an insurance contract is a determination, as a matter of law, that the contract is not so ambiguous that resort must be made to extrinsic evidence in order to ascertain the contract's meaning. *Sharp v. Indiana Union Mut. Ins. Co.* (1988), 526 N.E.2d 237, 239, *reh'g denied, trans. denied.* The provisions of an insurance contract are subject to the same rules of construction as are other contracts, and the construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Id.*

An insurer's duty to defend its insureds against suit is broader than its coverage liability or duty to indemnify. *Trisler v. Indiana Ins. Co.* (1991), Ind.App., 575 N.E.2d 1021, 1023. However, the insurer's duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation. *Id.* If the pleadings disclose that a claim is clearly excluded under the policy, no defense is required. *Id.*

The insurer may go beyond the face of the complaint and refuse to defend based upon the factual underpinnings of the claims against its insured. *Cincinnati Ins. Co. v. Mallon* (1980), Ind.App., 409 N.E.2d 1100, 1105. "Accordingly, in evaluating the factual basis of a claim and the insurer's concomitant duty to defend, this court may properly consider the evidentiary materials offered by the parties to show coverage." *Trisler,* 575 N.E.2d at 1023. When the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend. *Mallon,* 409 N.E.2d at 1105 (citing 7C John A. Appleman, Insurance Law and Practice, § 4683). "It is the nature of the claim and not its merits that determines the duty to

defend." *Terre Haute First National Bank* (1993), Ind.App., 634 N.E.2d 1336, 1339; *Mallon,* 409 N.E.2d at 1105.

### Indiana Insurance Policy

The Indiana Insurance policy provides coverage under the following provision:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury to which this insurance applies, caused by an occurrence....

R. 435. The parties dispute whether S.M.'s injury was caused by an occurrence, and whether her injury is covered as bodily injury under the policy.

### Occurrence

Coverage under the Indiana Insurance policy is triggered by an occurrence. "Occurrence" is defined in the policy as:

> An accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected no[r] intended from the standpoint of the insured.

R. 433. The parties do not dispute that Barger's conduct was not accidental. "In the context of insurance coverage, an accident means an unexpected happening without an intention or design." *Terre Haute First National Bank,* 634 N.E.2d at 1338; *see also, City of Jasper v. Employers Ins. of Wausau* (7th Cir.1993), 987 F.2d 453. And, Indiana law infers that Barger intended to injure S.M., regardless of his subjective mental state. *Wiseman v. Leming* (1991), Ind.App., 574 N.E.2d 327, 329, *reh'g denied, trans. denied.* Thus, as a matter of law, S.M.'s injury was intended from the standpoint of Barger, an insured. The parties do not dispute that Barger's misconduct was not an occurrence.

However, the school argues that the separate allegations made against the school do rise to an occurrence under the policy. S.M.'s complaint sets forth claims against the school under a theory of negligence in counts separate from that brought against Barger. The school contends that the policy requires

Indiana Insurance to consider these claims against the school separate from those brought against Barger.

The policy states that "[t]he insurance afforded applies separately to each insured against whom claim is made or suit is brought...." R. 433. The school links this provision to the definition of an occurrence requiring the injury to be neither expected nor intended from the standpoint of *the* insured.[1] R. 433 (emphasis added). The school concludes that in order to determine whether S.M. has alleged an occurrence against the school, we must analyze the claims brought against the school separately from the claims brought against Barger.

Words in an insurance contract should be given their plain and ordinary meaning whenever possible. *Lexington Ins. Co. v. American Healthcare Providers* (1993), Ind. App., 621 N.E.2d 332, 335, *trans. denied.* The Indiana Insurance policy states that the coverage applies separately to each insured. Whether an occurrence has been alleged is determined from the standpoint of the insured. *Trisler,* 575 N.E.2d at 1023. The school is a separate insured under the policy, and S.M. has not alleged any intentional conduct on the part of the school. S.M.'s claims against the school sound in negligence.

Indiana Insurance has not designated any evidence demonstrating that the school's alleged conduct was not an accident: there is no evidence that the school intended or expected Barger's misconduct or that the molestation was the result of the school's intent or design. *Terre Haute First National Bank,* 634 N.E.2d at 1338. Indiana Insurance argues that, under Indiana law, S.M.'s injury is intended from the standpoint of the school because we infer that child molesters

intend to harm their victims. *See Wiseman,* 574 N.E.2d at 329.

In support of this position, Indiana Insurance points to cases from other jurisdictions that have concluded that insurance policies, which define "occurrence" in terms virtually identical to the Indiana Insurance policy, provide no coverage for child molestation since the law infers that the injury is intended from the standpoint of *the* insured. *See Commercial Union Ins. Co. v. Sky, Inc.* (W.D.Ark.1992), 810 F.Supp. 249; *Old Republic Ins. v. Comprehensive Health Care* (N.D.Tex.1992), 786 F.Supp. 629, *aff'd,* 2 F.3d 105. However, the cases cited by Indiana Insurance do not discuss the critical provision found in the Indiana Insurance policy calling for "the insurance afforded [to be applied] separately to each insured against whom claim is made or suit is brought...." R. 433.

Indiana Insurance seeks to apply the insurance to the school and Barger jointly, in an effort to impute the intent the law infers to Barger to the school as well. But, the plain and unambiguous language of the policy requires that claims against each insured be treated separately. The child was molested by Barger, who is an insured separate from the school under the Indiana Insurance policy. The inference of an intent to injure S.M. cannot be imputed to the school.[2]

S.M. has alleged that the school acted negligently. There is no evidence demonstrating that any unreasonable conduct on the part of the school was not accidental. And, we cannot impute Barger's intent to injure S.M. to the school. With respect to the school, S.M. has alleged that her injury arises from an occurrence.

### *Bodily Injury*

Nonetheless, Indiana Insurance contends that the insurance policy still does not

---

1. The school contends that, if the policy referred to "*an* insured," then the intentional misconduct of any insured person, including Barger, could preclude all coverage under the policy. However, since the definition of occurrence depends upon the intent or expectation of "*the* insured," we must examine the separate conduct and intent of each insured against whom a claim is brought to determine if an occurrence has been alleged.

2. The school points out that among S.M.'s allegations, S.M. contends that the school breached a non-delegable duty under the common carrier rule to provide for her safety, and seeks to hold the school liable for the acts of its employee under *Stropes v. Heritage House Children's Center* (1989), Ind., 547 N.E.2d 244.

provide coverage for S.M.'s claims against the school because the damages sought by S.M. are not for bodily injury as contemplated by the parties. The Indiana Insurance policy only provides coverage for injury that falls within the policy definition of "bodily injury":

> "Bodily injury" means bodily injury, sickness or disease sustained during the policy period, including death at any time resulting therefrom.

R. 433. S.M.'s complaint alleges that, as a result of the molestation, she has sustained emotional damage and she has inflicted injury upon herself. R. 30. There is no allegation that Barger or the school inflicted physical injury upon S.M.'s person.

### Emotional Damage

Whether emotional damage arising from child molestation is bodily injury as defined in Comprehensive General Liability Insurance Coverage policies is a matter of first impression for this court. A number of jurisdictions that have squarely faced this issue have determined that emotional damage arising from child molestation is "bodily injury" under CGL policies. *See Allstate Ins. Co. v. McCranie* (S.D.Fla.1989), 716 F.Supp. 1440, 1443; *County of Chemung v. Hartford Cas. Ins. Co.* (1985), N.Y.Sup.Ct., 130 Misc.2d 648, 496 N.Y.S.2d 933, 935; *see also NPS Corp. v. Insurance Co. of North America* (1986), App. Div., 213 N.J.Super. 547, 517 A.2d 1211, 1212. We agree.

Indiana Insurance, citing cases from other jurisdictions, argues that the term "bodily injury" refers to a physical or corporeal injury and does not include emotional injury. However, many of the cases upon which Indiana Insurance relies involve claims for emotional damage that is not the result of bodily contact. *See Chatton v. National Union Fire Ins. Co.* (1992), 13 Cal.Rptr.2d 318, 323, 10 Cal.App.4th 846, 854, *reh'g denied* (investment fraud); *Rolette County v. Western Cas. & Sur. Co.* (D.N.D.1978), 452 F.Supp. 125, 130 (seizure of mobile home); *Aetna Cas. & Sur. Co. v. First Sec. Bank of Bozeman* (D.Mont.1987), 662 F.Supp. 1126, 1128 (wrongful termination); *St. Paul Fire & Marine Ins. Co. v. Campbell County School*

*Dist.* (D.Wyo.1985), 612 F.Supp 285, 287–88 (teacher harassed and embarrassed by satirical cartoon in school newspaper). We find this distinction is pivotal to our decision.

█ Indiana law recognizes that emotional injury that does not arise from bodily contact is not bodily injury as contemplated in CGL policies. *See Davidson v. Cincinnati Ins. Co.* (1991), Ind.App., 572 N.E.2d 502, 506 (claims of slander and malicious prosecution do not fall within definition of "bodily injury"); *see also, Grant v. North River Ins. Co.* (N.D.Ind.1978), 453 F.Supp. 1361, 1367 (claims of false imprisonment, false arrest or malicious prosecution do not fall within definition of "bodily injury"). We agree with the majority of jurisdictions holding that the term "bodily injury" does not include emotional damage that does not arise from a bodily touching. However, bodily touching is inherent to child molestation and the resulting emotional injury suffered by the victim of child molestation is bodily injury.

Indiana Insurance cites *American & Foreign Ins. Co. v. Church Schools* (E.D.Vir.1986), 645 F.Supp. 628, 632, for the proposition that physical injury and physical contact are not synonymous, and that "bodily injury" does not include emotional damages in the absence of physical injury. The *Church Schools* decision directly holds that emotional damages arising from child molestation do not fall within the meaning of the term "bodily injury." 645 F.Supp. at 632. However, the *Church Schools* court based its reasoning on *Rolette County*, 452 F.Supp. 125, and *St. Paul Fire & Marine Ins. Co.*, 612 F.Supp. 285, which both involve emotional damage arising from "non-touching" instances. We do not agree with this rationale.

Indiana Insurance also points to *Chatton*, 10 Cal.App.4th 846, 13 Cal.Rptr.2d 318, which examined several definitions of the word "bodily" and found that the term is limited to corporeal or physical harm. However, the policy definition of "bodily injury" is not limited to physical injury to the body. The CGL policy first defines "bodily injury" as bodily injury, using the term to define itself in a circular fashion. Thus, the term does include bodily, or physical, injury. But, the policy extends the meaning of "bodily

injury" beyond physical injury, and includes sickness and disease in the definition. Therefore, the policy covers more than a physical, or bodily, injury. As noted by one court, the average lay person reading the policy would not conclude that mental anguish is excluded from the ambit of "sickness." *Lavanant v. General Accident Ins. Co. of America* (1990), 164 A.D.2d 73, 561 N.Y.S.2d 164, 168.

The act which S.M. alleges as the source of her emotional trauma is Barger's physical intrusion upon her body. Indiana Insurance conceded during oral argument that had the school negligently allowed an employee to break S.M.'s leg, any emotional damages resulting therefrom would be covered under the policy. We find no distinction between emotional injuries arising from a broken leg and emotional injuries arising from the intrusion alleged in S.M.'s complaint. S.M. has alleged that the school's employee physically intruded upon her person, physically seized control of her body, and inflicted injury. That S.M. has not suffered a physical trauma at the hand of Barger is of no consequence. As noted by the New Jersey Superior court in *NPS Corp.*:

> [W]e disagree with [the insurer's] argument that bodily injury necessarily entails some physical or corporeal harm caused by the application of external violence. We are unable to separate a person's nerves and tensions from his body. Clearly, emotional trauma can be as disabling to the body as a visible wound. Moreover, it is common knowledge that emotional distress can and often does have a direct effect on other bodily functions.

517 A.2d at 1214.

That a child is injured is inherent to the crime of child molestation. *C.f. Wiseman*, 574 N.E.2d at 329. There is a physical violation of the child's person, whether it involves taking hold of a child and forcing the child's hand onto one's body, as are the circumstances of this case, or a more heinous viola-

tion of the child's person. In any respect, the emotional damage results from a physical intrusion upon the child's body and therefore is bodily injury.[3]

### *Self–Inflicted Physical Injury*

■ S.M.'s allegation that the negligence of the school caused her to inflict injury upon herself states a claim for bodily injury. Indiana Insurance's only challenge to this portion of S.M.'s claim is that it does not arise from an occurrence, arguing that the principal's conduct was not accidental and that he intended to harm S.M. However, we have already determined that, with respect to the school, the facts alleged in S.M.'s complaint demonstrate an occurrence under the Indiana Insurance policy. Clearly, the physical injury S.M. alleges that she inflicted upon herself as a result of the molestation is bodily injury under the policy.

### *Tudor Insurance Policy*

■ The Tudor policy provides coverage to the school under the following provision:

> The company agrees: ... With the Insured that if, during the policy period, any claim or claims are first made against the Insureds individually or collectively, for a Wrongful Act, the Company will pay on behalf of, in accordance with the terms of this policy, the Insureds, or any of them, their Executors, Administrators or Assigns, for all loss which the said Insureds, or any of them, shall become legally obligated to pay as damages.

R. 61. "Wrongful Act" is defined under the Tudor policy as "any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance and nonfeasance by an Insured, in the performance of duties for the Educational Entity." R. 61. The Tudor policy excludes coverage for "any damages, whether direct, indirect or consequential, arising from, or caused by, bodily

---

3. This is in harmony with Indiana law governing causes of action for infliction of emotional injury. In order to recover for emotional injury, one must sustain a physical impact but need not suffer a physical injury. *Shuamber v. Henderson* (1991), Ind., 579 N.E.2d 452, 456; *see also, Gorman v. I & M Elec. Co.* (1994), Ind.App., 641 N.E.2d 1288, 1290; *J.L. v. Mortell* (1994), Ind. App., 633 N.E.2d 300, 304.

injury, personal injury, sickness, disease or death...." R. 62.

We have determined that the emotional damage sustained by S.M. is bodily injury, as well as the physical injury she inflicted upon herself. The Tudor policy excludes coverage for damage arising from or caused by bodily injury. S.M.'s claims against the school are excluded from the Tudor policy. The Tudor policy provides no coverage for these claims and Tudor is under no duty to defend or indemnify the school.

The school contends that the exclusion provision in the Tudor policy makes the insurance coverage illusory by precluding coverage for every potential loss, and therefore the court should enforce the policy to provide coverage reasonably expected by the insured. *Davidson*, 572 N.E.2d at 508. However, the Tudor policy is not illusory. While it does not provide coverage for bodily injury, it does protect the school from liability arising in matters such as contract disputes, pension administration, constitutional claims arising from impermissible forms of discrimination among students or employees, and claims of deficiencies in educational programs, counseling or transportation. *See Foreman v. Continental Cas. Co.* (5th Cir. 1985), 770 F.2d 487, 489. The coverage is not illusory, but does not apply to claims for bodily injury.

### CONCLUSION

The Indiana Insurance policy requires Indiana Insurance to defend and indemnify the school for S.M.'s bodily injury, which includes the alleged emotional damage as well as the self-inflicted physical injury. We therefore REVERSE the trial court's award of summary judgment in favor of Indiana Insurance.

The Tudor insurance policy excludes coverage for S.M.'s alleged bodily injury. Summary judgment in favor of Tudor Insurance is AFFIRMED.

SHARPNACK, C.J., and DARDEN, J., concur.