**ALLSTATE INSURANCE CO., Plaintiff,**

v.

**Robert L. DAVIS, Nancy Davis, Jonathan Davis, and Debra Fountain, Defendants.**

**No. 96–156–C B/S.**

United States District Court, S.D. Indiana, New Albany Division.

May 21, 1998.

John W. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, IN, for Plaintiff.

Dennis R. Tackett, Tackett, Taurman & Sonne, New Albany, IN, Stephen W. Voelker, Jeffersonville, IN, for Defendant.

*ENTRY GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT*

BARKER, Chief Judge.

This matter comes before the Court on Plaintiff's Motion for Summary Judgment, seeking a declaratory judgment that Debra Fountain's homeowners' insurance policy does not cover the injuries suffered by Jonathan Davis on October 10, 1995. For the following reasons, Plaintiff's Motion for Summary Judgment is *GRANTED.*

## I. *BACKGROUND*

Allstate Insurance Company ("Allstate"), an Illinois corporation with its principal place of business in Northbrook, Illinois, issued a homeowners' insurance policy to Debra Jean Fountain ("Fountain") for her residence in New Albany, Indiana, that was in effect on October 10, 1995. (Plaintiff's Exhibit A).

Fountain was scheduled to babysit five month old Jonathan Davis ("Jonathan") at her residence from approximately 7:00 a.m. until 5:00 p.m on October 10, 1995. (Davises' Answer ¶ 1; Fountain Answer ¶ 11, 12). As scheduled, Jonathan's mother, Nancy Davis, brought him to Fountain's residence at approximately 7:00 a.m. on October 10, 1995. (Fountain Depo. at 14–15). Although Jonathan was fussy around noon and into the afternoon, he otherwise appeared in good health. (*Id.* 19–23). Because of his fussiness, Fountain testified that she bounced Jonathan on her knee by holding him on her lap with either her hands under his armpits, her thumbs on his chest, or one hand on his chest and the other on his back. (*Id.* at 45–46, 65–66).

At approximately 3:00 p.m., Jonathan's condition changed for the worse. (*Id.* at 36). He began to perspire around his forehead, his color changed, he made no sounds, was listless, and moved very little. (*Id.* at 38, 81). Fountain immediately contacted Nancy Davis, who arrived at Fountain's home soon thereafter. (*Id.* at 39). Jonathan then was taken by ambulance to the Floyd Memorial Hospital, where emergency room doctors treated him. (N. Davis Depo. at 33–34). Jonathan was treated further at Kosair Children's Hospital in Louisville by Drs. Gregory Nazar and William Smock. (R. Davis Depo). Both doctors concluded that Jonathan had sustained an acceleration-deceleration injury to his brain causing a mild concussion and subdural hematoma, consistent with being shaken. (Nazar Depo. at 10; Smock Depo. at 15–16). Doctor Smock opined that Jonathan was shaken while in the care of Fountain, since post-concussive symptoms arise almost immediately after the concussive injury. (Smock Depo. at 20–22).

Soon thereafter, the New Albany police department conducted an investigation into the events of October 10, 1995 and concluded that Fountain caused Jonathan's injuries. (Fountain Depo. at 73). Fountain was charged with Battery, a Class B felony, and ultimately pleaded guilty to criminal recklessness, a Class D felony. (*Id.*)[1]

As a result of Jonathan's October 10, 1995 injuries, the Davises sued Fountain for injuring Jonathan. (Exhibit B of Complaint). Fountain's insurer, Allstate, now seeks a declaratory judgment that Fountain's homeowners' policy does not cover the Davises' claims.

## II. *SUMMARY JUDGMENT STANDARDS*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). A *genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the non-moving party on the particular issue. Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505,

---

1. Virtually all of the material facts are undisputed. Whether Fountain bounced Jonathan with the intention of injuring him is the only disputed material fact cited by Defendants. *See* Davises Response Brief at 1–4 (statement of material facts). Notably, Fountain's response brief simply incorporates the Davises' Response Brief and adds Fountain's affidavit, which asserts that she did not intend to injury Jonathan. *See* Fountain Response Brief.

2510, 91 L.Ed.2d 202 (1986); *Methodist Med. Ctr. v. American Med. Sec., Inc.,* 38 F.3d 316, 319 (7th Cir.1994).

In resolving a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movants. *Patel v. Allstate Ins. Co.,* 105 F.3d 365, 366 (7th Cir.1997); *Spraying Sys. Co. v. Delavan, Inc.,* 975 F.2d 387, 392 (7th Cir. 1992). However, we must not "ignore facts in the record merely because they are unfavorable.... [A non-movant] gets the benefit of the doubt only if the record contains competent evidence on both sides of a factual question." *Patel,* 105 F.3d at 366. Thus, if genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).

## III. *DISCUSSION*

Allstate contends that its policy does not cover Jonathan's injuries because (1) they were not the result of an "accident"; (2) they were the result of acts that Fountain "intended or expected" to cause bodily injury; and (3) they were the result of a "criminal act" by Fountain. Because the first ground is dispositive, we do not address the second and third grounds.

The policy issued by Allstate to Fountain provides coverage for "damages ... arising from an occurrence." The policy defines an "occurrence" as follows:

'Occurrence'—means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage."

Allstate Policy at 4 (Plaintiff's Exhibit A). Although "accident" is not defined in the policy, the parties agree that the courts have defined the term as it is used in liability policies under Indiana law to mean "an unexpected happening without intention or de-

sign." Plaintiff's brief at 17; Davises' Response Brief at 8; *see R.N. Thompson & Associates, Inc. v. Monroe Guaranty Ins. Co.,* 686 N.E.2d 160, 164 (Ind.Ct.App.1997); *General Accident Ins. Co. v. Gastineau,* 990 F.Supp. 631, 635–36 (S.D.Ind.1998) (Barker, C.J.).

Allstate contends that Jonathan's injuries did not result from an "accident" because the act that caused his injuries—Fountain bouncing Jonathan on her knee—was intentional. Defendants rejoin that Fountain did not intend to injure Jonathan by bouncing him on her knee and therefore the injuries arose from an "accident." [2]

The Seventh Circuit in *Red Ball Leasing v. Hartford Accident & Indemnity Co.,* 915 F.2d 306 (7th Cir.1990) (applying Indiana law), held that intentional acts are not "accidents," as that term is used in the standard insurance policy definition of "occurrence." [3] In that case, Red Ball financed the sale of four trucks to Bob Luttrell. Red Ball subsequently repossessed those trucks based on the mistaken belief that Luttrell was in default on his payments. *Id.* at 308. Luttrell then sued Red Ball for conversion and breach of contract. *Id.* Red Ball's insurer, Hartford, refused to defend Red Ball in the action, contending that the conversion was not an "accident" and therefore not covered under the policy. *Id.* Red Ball eventually settled with Luttrell and sued Hartford to recover the settlement amount and its attorney fees. *Id.*

The district court granted Hartford's motion for summary judgment, holding that Luttrell did not allege an "accident" because his injury was "the natural result of the voluntary and intentional act of repossession." *Id.* The Seventh Circuit affirmed, holding that "the decision to take the trucks—an intentional act of Red Ball—[was] not an 'accident' under the terms of the insurance policy." *Id.* at 312.

Similarly, in the instant case, Jonathan's injury was the natural result of Fountain's

---

**2.** It is undisputed that the theory of the Davises' lawsuit against Fountain is that Fountain bounced Jonathan on her knee, causing injury.

**3.** This holding remains in accord with Indiana law. *See Erie Ins. Co. v. American Painting Co.,* 678 N.E.2d 844, 846 (Ind.Ct.App.1997).

intentional act of bouncing Davis on her knee and therefore was not an "accident" under the terms of the insurance policy. *See GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1117 (7th Cir.1995) ("[w]here acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by accident even though that result may have been unexpected, unforeseen and unintended") (citations omitted).

Judge McKinney in *Allstate Ins. Co. v. Norris,* 795 F.Supp. 272 (S.D.Ind.1992), came to a similar conclusion. In that case, an unidentified assailant fired two pistol shots at Norris. *Id.* at 273. Norris escaped into his home and re-emerged with a rifle. *Id.* He immediately began shooting in the direction of his assailant. *Id.* Although he missed his assailant, Norris did hit Jeana Duane ("Duane"), a bystander in a nearby house. *Id.* Norris eventually pled guilty to felony criminal recklessness and was sued by Duane for assault and battery. *Id.* at 274. Norris' insurer, Allstate, sought a declaratory judgment that it was not liable for any of Duane's claims under Norris' homeowner's policy. *Id.* Allstate contended that, among other things, Duane's injuries did not result from an "accident," since Norris intended to shoot his rifle. *Id.* Norris in response argued that he did intend to shoot or injure Duane and therefore her injuries resulted from an "accident." *Id.*

Relying on *Red Ball, supra,* Judge McKinney held that there is "a clear distinction between an event that is unexpected or unintended (which is an accident), and an event or act that is intended, but caused unexpect-

ed consequences (which is not)." *Id.* at 275. "Under this distinction, a volitional act— which is always intended—does not constitute an accident, even where the results may be unexpected or unforeseen." *Id.* citing *Red Ball,* 915 F.2d at 309–11 & n. 1.[4] Accordingly, Judge McKinney held that Duane's injuries were not the result of an "accident" and therefore Allstate was not liable for Duane's claims.

Although Davis acknowledges *Red Ball* and *Norris,* he maintains that they are inconsistent with decisions made by Indiana state courts. In support of this contention, Davis relies exclusively on the Indiana Court of Appeals decision in *Sans v. Monticello Ins. Co.,* 676 N.E.2d 1099 (Ind.Ct.App.1997). In that case, Elkins, a bartender at the Tick Tock Lounge, ordered Sans out of the lounge. *Id.* at 1100. When Sans attempted to reenter the lounge, Elkins raised his arm, brandishing a .25 caliber handgun. *Id.* The gun went off and a bullet struck Sans, causing injury. *Id.* Thereafter, Sans sued Elkins and the Tick Tock Lounge, alleging that Elkins had "carelessly and negligently" shot Sans. *Id.* at 1100–01. The Tick Tock's insurer, Monticello, brought a declaratory judgment action and ultimately was granted summary judgement on two grounds: (1) the shooting incident was not an "accident neither expected nor intended from the standpoint of the insured," and (2) the incident fell under the policy's "assault and battery" exclusion. *Id.* The Indiana Court of Appeals reversed, holding that there was a genuine issue of material fact regarding Elkins' intent to fire the gun, rendering summary judgment inappropriate. *Id.* at 1100.

---

4. Davis contends that volitional acts are not always non-accidents. He gives the example of car crash caused by a driver changing lanes without checking his blind spot. Davis points out that this type of car crash is a classic example of an accident, even though the driver intended to change lanes.

The distinguishing factor between the facts in the instant case and this hypothetical is that the intentional act of changing lanes was not the direct cause of the injury. Rather, it was the unintentional act of crashing into the other car that directly caused the injury. If the driver had intentionally crashed his car into the other car, then it would not be an accident. Conversely, in the instant case, the act which is alleged to have

directly caused Jonathan's injuries—Fountain's bouncing of Jonathan—was clearly intentional. The Seventh Circuit in *Red Ball,* 915 F.2d 306, addressed the distinction between the two situations, providing:

> Injury that is caused directly by negligence must be distinguished from injury that is caused by a deliberate and contemplated act initiated at least in part by the actor's negligence at some earlier point. The former injury may be an accident. However, the latter injury, because it is intended and the negligence is attenuated from the volitional act, is not an accident.

*Id.* at 311.

*Sans* is consistent with the analysis in both *Red Ball* and *Norris.*[5] In all three cases, whether the injury resulted from an "accident" hinged on whether the insured intended to commit the act that resulted in injury.[6] *Sans* held that summary judgment was inappropriate because whether the insured's inteny to act was disputed, whereas summary judgment was appropriate in *Red Ball* and *Norris* because in both cases it was undisputed that the insured intended to commit the act that resulted in injury.

In the instant case, like in *Red Ball* and *Norris,* there is no dispute that the insured (Fountain) intended to commit the act that allegedly resulted in injury (bouncing Jonathan on her knee). Accordingly, Jonathan's injuries did not result from an, "accident" and therefore are not covered by Fountain's homeowners' insurance policy.

### IV. CONCLUSION

For the aforementioned reasons, Debra Fountain's homeowners' insurance policy does not cover the injuries suffered by Jonathan Davis on October 10, 1995 and Plaintiff's Motion for Summary Judgment is therefore *GRANTED.* Consequently, Allstate is not liable to pay or settle the claims by Defendants. Nor is Allstate obligated to defend Fountain, or to contribute funds toward her defense, with regard to such claims.

---

**5.** The Indiana Supreme Court has held that intentional conduct is not "accidental" and thus not an "occurrence." *See Transamerica Ins. Servs. v. Kopko,* 570 N.E.2d 1283 (Ind.1991).

**6.** In *Sans,* whether the insured expected or intended the injury was also relevant because the insurance policy at issue defined an occurrence

as "an accident neither expected nor intended from the standpoint of the insured." Notably, the policy at issue here does not contain language requiring that the injuries be expected or intended by the insured. *See Fidelity and Guar. Ins. v.. Everett I. Brown Co.,* 25 F.3d 484 (7th Cir.1994) (discussing that distinction).